UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

12 CIV 9360

CASE NO.



GLORIA COOTS BALDWIN,
PATRICIA BERGDAHL,
and CHRISTINE PALMITESSA,
individuals,

 Plaintiffs,

v.

EMI FEIST CATALOG, INC.,
a New York corporation,

 Defendant.

_____/

## COMPLAINT

 Plaintiffs Gloria Coots Baldwin, Patricia Bergdahl, and Christine Palmitessa (collectively "Plaintiffs"), by their attorneys, Carey Rodriguez Greenberg O'Keefe, LLP and Caplan & Ross, LLP, as and for their Complaint against defendant EMI Feist Catalog, Inc. ("Defendant" or "EMI"), allege as follows:

### NATURE OF THIS ACTION

 1. This action involves the estate of John Frederick Coots, also known as J. Fred Coots ("Coots"), specifically the copyrights, rights and interests in the world famous musical composition entitled "Santa Claus is Comin' to Town" (the "Work") composed in 1934 by Coots and James Lamont Gillespie, also know as Haven Gillespie ("Gillespie"). The Work was registered with the Copyright Office on September 27, 1934 under registration number Eu 93634.

 2. This is an action for a declaratory judgment pursuant to 28 U.S.C. Sections 2201 (a) and 2202 to declare valid and enforceable the notice of termination under 17 U.S.C. Section

203 recorded on April 17, 2007 with the United States Copyright Office under volume number 3550, document number 153 (the "2007 notice"), thereby terminating Defendant's interests in the Work effective December 15, 2016, the date of effective termination listed in the 2007 notice.

3.      In the alternative, if the Court finds the 2007 notice invalid and unenforceable, Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. Sections 2201 (a) and 2202 to declare valid and enforceable the notice of termination under 17 U.S.C. Section 203 recorded on March 16, 2012 with the United States Copyright Office under volume number 3604, document number 369 (the "2012 notice"), thereby terminating Defendant's interests in the Work effective December 15, 2021, the date of effective termination listed in the 2012 notice.

## THE PARTIES

4.      Plaintiffs are individuals and members of the Coots family.  Coots was born on May 2, 1897 and he died on April 8, 1985, followed by his wife, Marjorie Coots, on February 2, 1997.  Coots was a talented songwriter who wrote hundreds of songs in his lifetime including the famous Christmas song "Santa Claus is Comin' to Town," the subject of this lawsuit.

5.      The statutory successors of Coots' rights in the Work pursuant to 17 U.S.C. Sections 203 (a) (1) and (2) are: a) Gloria Coots Baldwin, daughter of Coots, and owner of one third of Coots' interest in the Work; b) Patricia Bergdahl and Christine Palmitessa, daughters of Patricia Coots Chester, daughter of Coots and now deceased, each owner of one sixth of Coots' interest in the Work respectively; and c) Sean Coots, Jonathan Coots, Jeremy Coots and Robin Coots, children of John F. Coots Jr., son of Coots and now deceased, each owner of one twelfth of Coots' interest in the Work respectively.  Clayton D. Coots was the fourth child of Coots.  He died on September 17, 1984 without children.

6.      This action is brought by Gloria Coots Baldwin, Patricia Bergdahl, and Christine Palmitessa, altogether owners of more than one half of Coots' termination interest in the Work, as required by 17 U.S.C. Sections 203 (a) (1) and (2) (the "Plaintiffs").

7.      Gloria Coots Baldwin is an individual who resides in the State of Florida, Patricia Bergdahl is an individual who resides in the State of Connecticut, and Christine Palmitessa is an individual who resides in the State of Florida.

8.      Defendant is EMI Feist Catalog, Inc.  Defendant is part of the EMI Group, a multinational music company with its central headquarters in London, United Kingdom.  On information and belief, EMI Feist Catalog, Inc. is the legal entity who acts as a holding company which holds title to various musical works, including the Work at issue in this action.  EMI Feist Catalog, Inc. is the successor in interest of Robbins Music Corporation ("Robbins"), the assignee under the copyright assignment in the Work entered into between Coots and Robbins on December 15, 1981 (the "1981 grant.")  Robbins was the successor in interest to Leo Feist, Inc. ("Leo Feist").  Leo Feist was the assignee under a copyright assignment in the Work entered into between Gillespie, Coots and Leo Feist on September 5, 1934.

9.      Defendant EMI Feist Catalog, Inc. is a New York corporation with principal offices located at 75 Ninth Avenue, 4th Floor, New York, New York 10011 ("Defendant" or "EMI").

## JURISDICTION AND VENUE

10.      Pursuant to 28 U.S.C. Sections 2201 (a) and 2202, Plaintiffs seek a declaratory judgment regarding their rights and obligations in a controversy between Plaintiffs and Defendant concerning the validity and effectiveness of the 2007 notice under 17 U.S.C. Section

3

203 and, in the alternative, concerning the validity and effectiveness of the 2012 notice under 17 U.S.C. Section 203.

11.   Pursuant to 28 U.S.C. Section 1331, this Court has subject matter jurisdiction as this case involves a civil action raising a federal question.  Pursuant to 28 U.S.C. Section 1338 (a), this Court has original and exclusive jurisdiction over the copyright claims and federal declaratory relief claims as this case involves a civil action arising under the copyright laws of the United States.

12.   Personal jurisdiction and venue over the parties and this action lies within this district because Defendant resides in New York, and is a New York Corporation with its principal offices located in New York.

## COPYRIGHT ACT BACKGROUND

13.   Under the 1909 Copyright Act, the copyright term in a work of authorship was valid for an original term of 28 years and a renewal term of 28 years (*see* Section 23, Copyright Act of 1909).  Copyright grants (i.e. conveyances of the authors rights, title and interest in the work to third parties such as EMI) made under the 1909 Copyright Act were generally made for the original term of 28 years unless otherwise provided by the parties in the grant.  The author of a work of authorship was to renew the copyright in the work during the last year of the original term in order for the copyright in the work to be renewed.   Once renewed, the author could enter into a new grant and transfer his right, title, and interest in the renewal term of the copyright.

14.   Legislation enacted subsequent to the 1909 Copyright Act has substantially extended the copyright term in a work of authorship.  Under the 1976 Copyright Act, the renewal term of copyright was extended by 19 years, bringing the renewal term to 47 years.   Under the

1998 Copyright Extension Act, the renewal term was extended by an additional 20 years, bringing the renewal term to 67 years.

15.     Particularly significant to this action, the 1976 Copyright Act further created two distinct termination provisions by which authors could terminate grants and assignments of the rights in their copyrighted works; to wit: the termination provisions under 17 U.S.C. Section 203 and the termination provisions under 17 U.S.C. Section 304 (c), the former applying to grants executed after January 1, 1978, the latter applying to grants executed before January 1, 1978. These termination rights exist and are afforded to the author and/or the author's statutory heirs irrespective of any contractual provisions contained in the grant to the contrary.

16.     The termination provisions of 17 U.S.C. Section 203 allow an author (or, if the author is deceased, the persons entitled to exercise more than one half of the author's termination interest) to terminate a copyright grant executed after January 1, 1978, within a period of five years starting at the end of thirty-five years following the execution of the grant (17 U.S.C. § 203 (a)(3)). An alternative method of computation of the effective date of termination applies when "the grant covers the right of publication of the work", where the termination can be effected within a period of five years beginning at the end of thirty-five years from the date of publication of the work under the grant or at the end of forty years from the date of execution of the grant, whichever term ends earlier (17 U.S.C. § 203 (a)(3)). The written notice of termination must be signed by the author (or by the persons holding the majority of the termination interests) (17 U.S.C. § 203 (a)(4)). The notice must state the effective date of termination. The notice must be served upon the grantee or his successor in title no less than two or more than ten years before the effective date of termination listed in the notice. The notice of termination must then be recorded with the Copyright Office before its effective date as a condition to its taking effect and

must further comply with the requirements set forth by the Copyright Office under 37 C.F.R. Section 201.10. Finally, a termination under 17 U.S.C. Section 203 is only available for grants executed by the author himself (i.e. inapplicable to grants executed solely by the author's statutory heirs)(17 U.S.C. § 203 (a)).

17.     The termination provisions of 17 U.S.C. Section 304 (c) are similar except that 17 U.S.C. Section 304 (c) exclusively applies to the termination of grants for the extended renewal term of copyright and executed prior to January 1, 1978.

## FACTS RELEVANT TO ALL COUNTS

18.     On September 5, 1934, Gillespie and Coots, authors of the Work, entered into a publishing agreement entitled "Standard Uniform Popular Songwriters Contract" (the "1934 grant") with Leo Feist under which Gillespie and Coots assigned all their rights in the Work to Leo Feist. The 1934 grant was a worldwide grant. The royalties to be paid to Gillespie and Coots were in the amount of 33 ⅓ % to be equally divided amongst the authors. A copy of the 1934 grant is hereby attached as <u>Exhibit A</u>.

19.     On September 27, 1934, the Work was registered in the Copyright Office in the name of Leo Feist under registration number Eu 93634. A copy of the application for copyright registration is hereby attached as <u>Exhibit B</u>.

20.     On December 3, 1951, an agreement was entered into between Coots and Leo Feist (the "1951 grant") where Coots assigned to Leo Feist his rights in the Work for the renewal term of the copyright (<u>Exhibit C</u>). The royalties to be paid to Coots under the 1951 grant were equal to fifty (50%) percent of all net receipts derived from the exploitation of the Work.

21.     On September 27, 1961, the copyright in the Work was renewed by Gillespie and Coots (registration number R 282480 – <u>Exhibit D</u>).

22.     On September 24, 1981, a document entitled "notice of termination covering extended renewal term under section 304 (c)" was signed by Coots (the "1981 notice"). A copy of the 1981 notice is hereby attached as Exhibit E. The 1981 notice listed "Leo Feist, Inc." as the grantee to whom notification was made, the year "1934" as the approximate date of execution of the grant to be terminated, "Santa Claus is Coming to Town" as the title of the work to which the notice pertained, "EU44455" as the registration number of the work to which the notice pertained, "October 23, 1934" as the registration date of the work to which the notice pertained and "October 23, 1990" as the effective date of termination of the grant. The grant to be terminated was described as a "music publishing agreement".

23.     On November 25, 1981, William Krasilovsky, attorney at law, representing the interests of Coots at the time, sent the 1981 notice accompanied by a termination fee of $10.00 to the Copyright Office (the "1981 letter"). A copy of the 1981 letter is hereby attached as Exhibit F.

24.     On December 15, 1981, an agreement was entered into between Coots and Robbins, successor in title to Leo Feist (predecessor in interest to Defendant), where Coots assigned to Robbins his rights in the Work for the new extended copyright term under the Copyright Act of 1976 (the "1981 grant") as follows:

> Grantor hereby sells, assigns, grants, transfers and sets over to Grantee, it successors and assigns, all rights and interests whatsoever now or hereafter known or existing, *heretofore or at any time or times hereafter acquired or possessed by Grantor in and to Said Composition* (…) and all United States reversionary and termination interests in copyright now in existence or expectant, including all rights reverted, reverting or to revert to Grantor his heirs (…) by reason of the termination of any transfers or licenses covering any extended renewal term of copyright pursuant to Section 304 of the Copyright Act of 1976, together with all renewals and extensions thereof.

See provision 1, pages 1-2 of the 1981 grant.

A copy of the 1981 grant is hereby attached as <u>Exhibit G</u>.  The 1981 grant was made subject to the laws of the State of New York.  The 1981 grant was limited to the United States territory.  In the 1981 grant, Coots represented that he had executed, served upon Robbins and recorded in the Copyright Office a notice of termination under section 304 (c) of the Copyright Act of 1976 and thereby had terminated the 1951 grant. It was the express intent of both Coots and Robbins that the 1951 Grant be terminated and replaced by the 1981 grant. This intent was expressed by the inclusion of the provision, among other provisions, that the 1981 grant convey all of the author's rights in the Work which he "heretofore" (i.e. before now) possessed or "at any time or times hereafter acquired or possessed".  By the express provisions of the 1981 grant, royalties to be paid by Robbins to Coots under the 1981 grant were to be paid according to the same terms contained in the 1951 grant.  In addition, Coots expressly directed Robbins that the $100,000.00 in bonus payments due him under the 1981 grant be paid in equal shares to Coots' four children over a period of several years starting in 1981 and directed that 10% of the $100,000 bonus be paid to Coots' lawyer at the time, William Krasilovsky.

25.    On May 7, 1982, a letter from Mark Thur, a copyright examiner from the Copyright Office, was sent to William Krasilovsky returning the unrecorded 1981 notice along with the termination fee (the "1982 letter").  A copy of the 1982 letter is hereby attached as <u>Exhibit H</u>.

26.    On April 8, 1985, Coots died.

27.    On or about April 6, 2004, a notice of termination under 17 U.S.C. Section 304 (d) was sent by certified mail by the Songwriters Guild of America, acting on behalf of Coots' statutory heirs under 17 U.S.C. Section 304 (d) including Plaintiffs, to EMI Feist Catalog, Inc., in

care of EMI April Music, Inc. and in care of EMI Music Publishing (the "2004 notice").  A copy of the 2004 notice is hereby attached as <u>Exhibit I</u>.

28.    On April 12, 2004, the 2004 notice was duly recorded in the Copyright Office under volume number 3510, document number 943.  The 2004 notice, entitled "notice of termination under section 304 (d)" listed "EMI Feist Catalog, Inc." as the grantee or grantee's successor whose rights were being terminated, "Santa Claus is Comin' to Town" as the title of the work to which the notice pertained, "September 27, 1934" as the date on which the copyright was secured, "EU93634" as the original registration number for the work to which the notice pertained, "September 27, 2009" as the effective date of termination.  The following statement was contained in the 2004 notice: "no termination was previously made by the parties effecting termination under section 304 (c)."

29.    On or about June 30, 2006, the administration agreement between the estate of Coots and the Songwriters Guild of America came to an end.

30.    On October 1, 2006, Plaintiffs entered into an exclusive administration agreement with Warner Music Corp., c/o Warner/Chappell Music, Inc. ('Warner") to administer the rights related to some of the musical compositions composed by Coots. The agreement between Warner and Plaintiffs did not include administration rights in the United States with respect to the Work.

31.    On or about March 30, 2007, Warner, as an accommodation to its clients and on behalf of Coots' heirs sent a notice of termination with respect to the 1981 grant under 17 U.S.C. Section 203. The 2007 notice terminating the 1981 grant was sent by certified mail to EMI Feist Catalog, Inc., EMI April Music, Inc., in care of EMI Music Publishing (the "2007 notice").  A copy of the 2007 notice is hereby attached as <u>Exhibit J</u>.

32.     On April 17, 2007, the 2007 notice was recorded in the Copyright Office under volume number 3550, document number 153.  The 2007 notice listed "EMI Feist Catalog, Inc. & EMI April Music, Inc." as the grantees or grantees' successors whose rights were being terminated, "Santa Claus is Comin' to Town" as the title of the work to which the notice pertained, "EP44456" as the original registration number for the work to which the notice pertained, "December 15, 1981" as the date of execution of the grant being terminated and "December 15, 2016" as the effective date of termination.  The 2007 notice was signed by John F. Coots Jr., Gloria Coots Baldwin, Christine Palmitessa and Patricia Bergdahl.

33.     Prior to receiving the 2007 termination notice, and consistent with Plaintiffs' claims asserted herein, EMI was cognizant that the 1981 grant in the Work was subject to termination and that if a termination notice was served any rights that EMI had in the Work would cease in 2016.

34.     In an email dated October 11, 2006, EMI's then Vice President of Copyright Research advised her colleagues that Plaintiffs were entitled to "serve for termination under section 203 earliest: 12/15/2006 (effective 12/15/2016)."

35.     Immediately following the 2007 notice terminating the 1981 grant effective December 2016, EMI sent a written offer to acquire the author's share of the Work for $2.75 Million.  The purchase price was calculated based on EMI's internal analysis that EMI would lose all rights to the Work in 2016.

36.     EMI's offer described above was never accepted.

37.     On October 23, 2009, Defendant, through counsel, Donald S. Zakarin, Esq. from the law firm of Pryor Cashman, LLP, wrote a letter to Warner and took a position that was 180 degrees opposite to EMI's previously articulated position held in 2006-2007.  In the October

2009 letter, EMI argued that Plaintiffs' termination notice seeking to terminate the 1981 grant was ineffective (the "2009 letter"). A copy of the 2009 letter is hereby attached as <u>Exhibit K</u>. In the 2009 letter, Defendant incorrectly contended, for the first time, that Defendant's rights in the Work could never be terminated and that Defendant's rights in the Work were valid until 2029, the year of expiration of the copyright in the Work.

38.     Defendant contended that the 1981 notice signed by Coots amounted to the exercise by Coots of his one–time termination right under 17 U.S.C. Section 304, even though the termination notice was served under Section 203 and Section 203 does not contain a one-time termination right provision. In support of this erroneous contention, Defendant wrote:

> "on or about September 24, 1981, J. Fred Coots served a Notice of Termination on the original grantee of the rights in the Composition. Consequently, Mr. Coots exercised his right of termination pursuant to Section 304 (c) of the United States Copyright Act. Thereafter, on or about November 25, 1981, according to documents in our possession, Mr. Krasilovsky transmitted the Notice of Termination to the Copyright Office together with a check for the filing fee."

See paragraph 2 page 1 of the 2009 letter.

39.     The 2009 letter contends that "Mr. Coots and Robbins Music Corporation (…) entered into a new agreement under Section 304 for the United States extended renewal term" (paragraph 3 page 1 of the 2009 letter).

40.     Defendant argued that the 1981 grant was effective on "the earliest date possible under the Copyright Act (which, but for the said agreement, would have been the effective date of the termination)" (paragraph 1 page 2 of the 2009 letter).

41.     Defendant claimed that the "purported Section 203 Termination Notice (…) is also void and ineffective, arguing there was no post-1978 grant of rights capable of being terminated under Section 203 other than that provided" under the 1981 grant. Defendant incorrectly argued, contrary to clear statutory authority to the contrary, that "Section 203 cannot

be employed to terminate a grant of rights for the extended renewal term where the termination right has already been exercised under Section 304 (c)."

42.    On March 13, 2012, a notice of termination under 17 U.S.C. Section 203, signed by Gloria Coots Baldwin, Christine Palmitessa and Patricia Bergdhal, was sent by certified mail to Defendant (the "2012 notice").  A copy of the 2012 notice is hereby attached as <u>Exhibit L</u>.

43.    On March 16, 2012, the 2012 notice was recorded in the Copyright Office under volume number 3604, document number 369.  The 2012 notice listed "EMI Feist Catalog, Inc." as the grantee or grantee's successor whose rights were being terminated, "Santa Claus is Comin' to Town" as the title of the work to which the notice pertained, "EU 93634" as the original registration number for the work to which the notice pertained, "December 15, 1981" as the date of execution of the grant being terminated and "December 15, 2021" as the effective date of termination.

## COUNT I
### (CLAIM FOR DECLARATORY RELIEF --
### THE 2007 NOTICE UNDER 17 U.S.C. § 203 IS VALID AND ENFORCEABLE)

44.    Plaintiffs repeat and reallege paragraphs 1 to 43 of this Complaint as though fully incorporated herein.

45.    The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes this Court to declare the rights and legal relations of parties to an active controversy under its jurisdiction.

46.    There is an actual, present and existing dispute between the parties concerning the termination of the grant of rights in the Work and the effectiveness of the 2007 notice.

47.    Plaintiffs contend that the 2007 notice is valid and enforceable under 17 U.S.C. Section 203.  Indeed, the 1981 grant falls within the scope of 17 U.S.C. Section 203.  Also, the 2007 notice was made by the appropriate parties under 17 U.S.C. § 203 (a).  Finally, the effective

date listed in the notice was valid and the service of the notice was proper under 17 U.S.C. §§ 203 (a) (3) and (4).

## A. THE 1981 GRANT FALLS WITHIN THE SCOPE OF 17 U.S.C. SECTION 203

48.    17 U.S.C. § 203 provides that termination under this section is only available for grants executed by the author on or after January 1, 1978 (17 U.S.C. § 203 (a)).

49.    The 2007 notice under 17 U.S.C. § 203 lists the 1981 grant as the grant that the 2007 notice purports to terminate (see Exhibit J).

50.    The 1981 grant was executed on December 15, 1981.  Also, the 1981 grant was executed by the author of the Work, Coots himself (see Exhibit G).

51.    As a consequence, the 1981 grant was a grant executed by the author after January 1, 1978 and is subject to the termination provisions of 17 U.S.C. § 203.

52.    Therefore, the 1981 grant falls squarely within the scope of 17 U.S.C. § 203 and thus the 2007 termination notice is proper and effective.

## B. THE 2007 NOTICE WAS SIGNED BY THE APPROPRIATE PARTIES UNDER 17 U.S.C. § 203 (A)

### 1.    The 2007 notice was executed by individuals holding the termination interest

53.    When a copyright grant is executed by only one author and at the time of termination the author is dead, termination of the grant can be effected by persons who own more than half of the author's termination interest under 17 U.S.C. § 203 (a)(2) (17 U.S.C. § 203 (a)(1)).

54.    17 U.S.C. § 203 (a)(2) defines who the owners of the author's termination interest are.  The author's surviving children and the surviving children of any dead child of the author own the termination interest unless there is a widow (17 U.S.C. § 203 (a)(2)(B)).  The

termination rights are divided among them on a per stirpes basis, the share of the children of a dead child can only be exercised by the majority of them (17 U.S.C. § 203 (a)(2) (C)).

55.   In 2007, the parties who executed the 2007 notice under Section 203 were: J. F. Coots Jr., Gloria Coots Baldwin, Christine Palmitessa, Patricia Bergdahl (see Exhibit J).   The statutory successors of Coots' rights in the Work pursuant to 17 U.S.C. Sections 203 (a) (1) and (2) are: a) Gloria Coots Baldwin, daughter of Coots, and owner of one third of Coots' interest in the Work; b) Patricia Bergdahl and Christine Palmitessa, daughters of Patricia Coots Chester, daughter of Coots and now deceased, each owner of one sixth of Coots' interest in the Work respectively; and c) Sean Coots, Jonathan Coots, Jeremy Coots and Robin Coots, children of John F. Coots Jr., son of Coots and now deceased, each owner of one twelfth of Coots' interest in the Work respectively.

56.   Therefore, the individuals who executed the 2007 notice were the appropriate holders of the termination rights under 17 U.S.C. § 203.

   2.   The 203 notice was executed by a majority of the termination interest

57.   Termination under 17 U.S.C. § 203 must be exercised by individuals who own more than half of the author's termination interest under 17 U.S.C. § 203 (a)(2) (17 U.S.C. § 203 (a)(1)).

58.   John F. Coots Jr., Gloria Coots Baldwin, Christine Palmitessa, Patricia Bergdahl, who signed and exercised the 2007 notice, altogether owned one hundred (100) per cent of the termination rights in the Work in 2007 (the fourth children of Coots died in 1984).

59.   Therefore, the parties who executed and exercised the 2007 termination notice owned more than one half of the termination interest of J. Fred Coots as required by 17 U.S.C. § 203 (a)(1).

## C. THE EFFECTIVE DATE OF TERMINATION LISTED IN THE 2007 NOTICE IS CORRRECT UNDER 17 U.S.C. § 203 (A)(3)

60.     17 U.S.C. § 203 (a)(3) provides that "termination of the grant may be effected at any time during a period of five years beginning at the end of thirty-five years from the date of execution of the grant; or, if the grant covers the right of publication of the work, the period begins at the end of thirty-five years from the date of publication of the work under the grant or at the end of forty years from the date of execution of the grant, whichever term ends earlier." As such, 17 U.S.C. § 203 (a)(3) provides a general rule to determine the effective date of termination of a grant (thirty-five years from execution of the grant) and an alternative rule (for grants covering the right of publication).

61.     Here, the effective date of termination listed in the 2007 notice is correct under the general rule.  The alternative rule listed in 17 U.S.C. § 203 (a)(3) does not apply.  However, if the alternative rule were to apply, the effective date of termination listed in 2007 notice would still be correct under the alternative rule.

62.     Pursuant to 17 U.S.C. § 203 (a)(3)'s general rule, the effective date of termination of a grant shall fall within a period of five (5) years beginning at the end of thirty-five (35) years from the date of execution of the grant.

63.     In the instant case, the grant that the 2007 notice terminates is the 1981 grant. The 1981 grant was executed on December 15, 1981.  The effective date of termination listed in the 2007 notice is December 15, 2016.

64.     Therefore, the effective date of termination listed in the 2007 notice is proper as December 15, 2016 falls within a period of five (5) years beginning at the end of thirty-five (35) years from the date of execution of the grant as required by 17 U.S.C. § 203 (a)(3).  Indeed, December 15, 1981 (date of execution of the grant) + thirty-five (35) years = December 14,

2016. December 15, 2016 is the first day of the following five (5) year period during which termination can be effected.

65.     As a consequence, the effective date of termination listed in the 2007 notice is correct under 17 U.S.C. § 203 (a)(3)'s general rule.

66.     The effective date of termination in this instance is not determined by the alternative rule under 17 U.S.C. § 203 (a)(3).

67.     The alternative rule under 17 U.S.C. § 203 (a)(3) is a rule that applies to grants covering the right of publication of the work where the effective date of termination is measured differently than under the general rule.

68.     Indeed, the alternative rule does not apply because this rule is designed "to cover cases where years elapse between the signing of the publication contract and the eventual publication of the work" (see H.R. Rep. 94-1476 at 5742).

69.     Here, there is no time elapsing between the signing of the contract and the publication of the work.  Indeed, in December 1981, at the time of signing of the grant in question, the work had already been in publication for nearly fifty (50) years (since 1934). This "alternative method of computation" was not intended to apply to instances involving works where, like Santa Claus is Comin' To Town, there is no lengthy period of time between the execution date of the grant and the publication of the work subject to the grant.

70.     Therefore, the alternative rule listed under 17 U.S.C. § 203 (a)(3) is not applicable.

71.     Even if the alternative rule for calculating the effective date of termination under Section 203 were to apply, the effective date of termination listed in the 2007 notice would still be correct.

72.     The alternative rule under 17 U.S.C. § 203 (a)(3) provides that the effective date of termination shall fall within a period of five (5) years beginning at the end of: a) thirty-five years from the date of publication of the work under the grant **or** b) at the end of forty years from the date of execution of the grant, whichever is earlier.

73.     In the instant case, the date of publication of the Work under the 1981 grant is December 15, 1981.

74.     The date of publication of the Work under the 1981 grant is December 15, 1981 because the 1981 grant became effective on the date of its execution.  Indeed, the parties to the 1981 grant expressly intended that the 1981 grant replace the 1951 grant by including, among other provisions, that the 1981 grant convey all of the author's rights "heretofore" (i.e. previously held) "or at any time" acquired in the Work.   grant.

75.     Since the 1981 grant became effective on December 15, 1981, the first publication of the Work under the 1981 grant was December 15, 1981.

76.     If the alternative rule for calculating the effective date of termination under 17 U.S.C. § 203 (a)(3) were to apply to determine the effective date of termination, the earlier date between thirty-five (35) years from the publication under the grant and forty (40) years from the execution of the grant would be the first of the two.   Indeed, December 15, 1981 (first publication under the grant) + 35 years = <u>December 15, 2016</u> (or 35 years from publication under the grant) **versus** December 15, 1981 (execution of the grant) + 40 years = <u>December 15, 2021</u> (or 40 years from execution of the grant).  December 15, 2016 is the earliest date of the two.

77.     Because December 15, 2016 is the effective date of termination listed in the 2007 notice, this date is correct under 17 U.S.C. § 203 (a)(3)'s alternative rule.

**D. THE ADVANCE NOTICE OF THE 2007 NOTICE IS VALID UNDER 17 U.S.C. § 203 (A)(4)**

1.  The proper parties signed the 2007 notice and the proper grantee was served with the 2007 notice

78.   17 U.S.C. § 203 (a)(4) requires that the termination be effected by service of the notice in writing, signed by the owners of the termination interest and served upon the grantee or its successor in interest.

79.   A written advance notice signed by the majority of the owners of the termination interest as defined under 17 U.S.C. § 203 (a)(1) and (2) was served upon the grantee's successor in title.   Indeed, the notice was signed by J. F. Coots Jr., Gloria Coots Baldwin, Christine Palmitessa, Patricia Bergdahl, owners of one hundred per cent of the termination rights at the time of signing.  Also, the notice was properly served upon the grantee's (Robbins) successor in title, EMI Feist Catalog, Inc., Defendant.

80.   Consequently, the notice was signed by the proper parties and served upon the proper grantee under 17 U.S.C. § 203 (a)(4).

2.  The proper effective date of termination was listed on the 2007 notice

81.   17 U.S.C. § 203 (a)(4)(A) provides that the effective date of termination needs to be stated in the notice of termination and that effective date must fall within the period of 5 years beginning at the end of thirty-five years from execution of the grant listed on the 2007 notice.

82.   The effective date of termination of December 15, 2016 was listed on the 2007 notice.  Also, the effective date of termination listed falls within the period of 5 years beginning at the end of thirty-five years from execution of the grant (December 15, 1981 + 35 years = December 14, 2016.  December 15, 2016 is the first day of the following five year period during which termination can be effected).

83.     Therefore, the proper effective date was listed on the 2007 notice.

3.      The timing of the service of the 2007 notice is correct

84.     17 U.S.C. § 203 (a)(4)(A) requires that the notice of termination be served not less than two and no more than ten years before the termination date listed in the notice.

85.     The 2007 notice was served on March 30, 2007 on Defendant, which is not less than two years prior to the effective date of termination (2016 – two years = 2014) and no more than ten years before the effective date of termination (2016 – ten years = 2006).

86.     Therefore, the timing of the service of the 2007 notice was correct.

4.      The 2007 notice was recorded with the Copyright Office

87.     17 U.S.C. § 203 (a)(4)(A) requires that a copy of the notice be recorded with the Copyright Office before the effective date of termination as a condition to its taking effect.

88.     On April 17, 2007, the 2007 notice was recorded in the Copyright Office under volume number 3550, document number 153.

89.     As a consequence, the 2007 notice was properly recorded with the Copyright Office.

**COUNT II**
**(CLAIM FOR DECLARATORY RELIEF --**
**IN THE ALTERNATIVE, THE 2012 NOTICE IS VALID AND ENFORCEABLE)**

90.     Plaintiffs repeat and reallege paragraphs 1 through 89 of this Complaint as though fully incorporated herein.

91.     The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes this Court to declare the rights and legal relations of parties to an active controversy under its jurisdiction.

92.     Defendant has placed Plaintiffs on notice that Defendant does not under any set of circumstances recognize Plaintiffs' termination rights. There is an actual, present and existing

dispute between the parties concerning the termination of the grant of rights in the Work and the effectiveness of the 2012 notice.

93.     In the event the Court were to declare Plaintiffs' 2007 notice as ineffective or invalid, then the 2012 notice is valid and enforceable under 17 U.S.C. Section 203.  Indeed, the 1981 grant falls within the scope of 17 U.S.C. Section 203.  Also, the 2012 notice was made by the appropriate parties under 17 U.S.C. § 203 (a).  Finally, the effective date listed in the notice (as an alternative to the effective date identified in the 2007 termination notice) is valid and the service of the notice was proper under 17 U.S.C. § 203 (a) (3) and (4).

94.     Plaintiffs have served Defendant with the 2012 notice in an abundance of caution in order to preserve Plaintiffs' right to terminate the 1981 grant under 17 U.S.C. § 203 in the event the Court declares that the 1981 notice was effective.

### A. THE 1981 GRANT FALLS WITHIN THE SCOPE OF 17 U.S.C. SECTION 203

95.     The 1981 grant falls within the scope of 17 U.S.C. Section 203 because the 1981 grant is a grant executed after January 1, 1978 and because the 1981 grant was a grant executed by the author.

96.     17 U.S.C. § 203 provides that termination under this section is only available for grants executed by the author on or after January 1, 1978 (17 U.S.C. § 203 (a)).

97.     The 2012 notice under 17 U.S.C. § 203 lists the 1981 grant as the grant that the 2012 terminates (see Exhibit L).

98.     The 1981 grant was executed on December 15, 1981.  Also, the 1981 grant was executed by the author of the Work, Coots himself (see Exhibit G).

99.     As a consequence, the 1981 grant was a grant executed by the author after January 1, 1978 and is subject to the termination provisions of 17 U.S.C. § 203.

100.    Therefore, the 1981 grant falls within the scope of 17 U.S.C. § 203 and thus the 2012 notice is proper.

## B. THE 2012 NOTICE WAS MADE BY THE APPROPRIATE PARTIES UNDER 17 U.S.C. § 203 (A)

1.      The 2012 notice was executed by individuals holding the termination interest

101.    When a copyright grant was executed by only one author and that author is now dead, termination of the grant can be effected by persons who own more than half of the author's termination interest under 17 U.S.C. § 203 (a)(2) (17 U.S.C. § 203 (a)(1)).

102.    17 U.S.C. § 203 (a)(2) defines who the owners of the author's termination interest are. The author's surviving children and the surviving children of any dead child of the author own the termination interest unless there is a widow (17 U.S.C. § 203 (a)(2)(B)). The termination rights are divided among them on a per stirpes basis, the share of the children of a dead child can only be exercised by the majority of them (17 U.S.C. § 203 (a)(2) (C)).

103.    The parties who executed the 2012 notice were: Gloria Coots Baldwin, Christine Palmitessa and Patricia Bergdahl (see Exhibit K). The statutory successors of Coots' rights in the Work pursuant to 17 U.S.C. Sections 203 (a) (1) and (2) are: a) Gloria Coots Baldwin, daughter of Coots, and owner of one third of Coots' interest in the Work; b) Patricia Bergdahl and Christine Palmitessa, daughters of Patricia Coots Chester, daughter of Coots and now deceased, each owner of one sixth of Coots' interest in the Work respectively; and c) Sean Coots, Jonathan Coots, Jeremy Coots and Robin Coots, children of John F. Coots Jr., son of Coots and now deceased, each owner of one twelfth of Coots' interest in the Work respectively.

104.    Therefore, the parties who executed the 2012 notice are the appropriate holders of the termination rights under 17 U.S.C. § 203.

2.      The 2012 notice was executed by a majority of the termination interest

105.    Termination under 17 U.S.C. § 203 must be exercised by individuals who own more than half of the author's termination interest under 17 U.S.C. § 203 (a)(2) (17 U.S.C. § 203 (a)(1)).

106.    Gloria Coots Baldwin, Christine Palmitessa and Patricia Bergdahl, who signed the 2012 notice, altogether own two-third of the termination interest in the Work (66.66%).

107.    Therefore, the parties who executed the 2012 notice own more than one half of the termination interest of J. Fred Coots as required by 17 U.S.C. § 203 (a)(1).

## C. THE EFFECTIVE DATE OF TERMINATION LISTED IN THE 2012 NOTICE IS VALID UNDER 17 U.S.C. § 203 (A)(3)

1.      The effective date listed in the 2012 notice is valid

108.    If the Court were to declare that the 1981 termination notice under 304 (c) was effective and terminated the 1951 grant as of October 23, 1990 (the termination date listed in the 1981 notice), then the 1981 grant would have become effective on October 23, 1990 and the date of publication of the work under the 1981 grant would be October 23, 1990.

109.    17 U.S.C. Section 203 provides as follows:

"Termination of the grant may be effected at any time during a period of five years beginning at the end of thirty-five years from the date of execution of the grant; or, if the grant covers the right of publication of the work, the period begins at the end of thirty-five years from the date of publication of the work under the grant or at the end of forty years from the date of execution of the grant, whichever term ends earlier" (17 U.S.C. § 203 (a)(3)).

110.    The alternative rule under 17 U.S.C. § 203 (a)(3) applies to grants covering the right of publication of the work.

111.   If the Court were to declare that the alternative rule under 17 U.S.C. § 203 (a)(3) applies, then the effective date of termination listed in the 2012 notice would be valid.

112.   Indeed, the earliest date between thirty-five (35) years from the publication under the grant and forty (40) years from the execution of the grant would be the second of the two. Indeed, thirty-five (35) years from publication under the grant is October 23, 1990 (publication under the grant) + thirty-five (35) years = October 23, 2025 **versus** forty (40) years from the date of execution of the grant is December 15, 1981 (execution of the grant) + 40 years = December 15, 2021.  December 15, 2021 is the earliest date of the two.

113.   Because December 15, 2021 is the effective date of termination listed in the 2012 notice, this date would be correct under 17 U.S.C. § 203 (a)(3)'s alternative rule.

### D. THE ADVANCE NOTICE OF THE 2012 NOTICE IS VALID UNDER 17 U.S.C. § 203 (A)(4)

#### 1.   The proper parties signed the 2012 notice and the proper grantee was served with the 2012 notice

114.   17 U.S.C. § 203 (a)(4) requires that the termination be effected by service of the notice in writing, signed by the owners of the termination interest and served upon the grantee or its successor in interest.

115.   A written advance notice signed by the majority of the owners of the termination interest as defined under 17 U.S.C. §§ 203 (a)(1) and (2) was served upon the grantee's successor in title (17 U.S.C. § 203 (a)(4)).  Indeed, the notice was signed by Gloria Coots Baldwin, Christine Palmitessa, Patricia Bergdahl, owners of two third (66.66%) of the termination rights at the time of signing.  Also, the notice was properly served upon the grantee's (Robbins) successor in title, EMI Feist Catalog, Inc., Defendant.

116.   Consequently, the 2012 notice was signed and exercised by the proper parties and served upon the proper grantee under 17 U.S.C. § 203 (a)(4).

   2.   The proper effective date of termination was listed on the 2012 notice

117.   17 U.S.C. § 203 (a)(4)(A) provides that the effective date of termination must be stated in the notice of termination and that effective date must fall within the period of 5 years beginning at the end of thirty-five years from the date of publication of the work under the grant or at the end of forty years from the date of execution of the grant, whichever term ends earlier.

118.   The earliest date between thirty-five (35) years from the publication under the grant and forty (40) years from the execution of the grant would be the second of the two. Indeed, thirty-five (35) years from publication under the grant is October 23, 1990 (publication under the grant) + thirty-five (35) years = October 23, 2025 **versus** forty (40) years from the date of execution of the grant is December 15, 1981 (execution of the grant) + 40 years = December 15, 2021. December 15, 2021 is the earliest date of the two.

119.   The effective of termination of December 15, 2021 is listed in the 2012 notice.

120.   Therefore, the proper effective date is listed on the 2012 notice.

   3.   The timing of the service of the 2012 notice is correct

121.   17 U.S.C. § 203 (a)(4)(A) requires that the notice of termination be served not less than two and no more than ten years before the termination date listed in the notice.

122.   The 2012 notice was served on March 13, 2012, which is not less than two years prior to the effective date of termination (2021 – 2 years = 2019) and no more than ten years before the effective date of termination (2021 – 10 = 2011).

123.   Therefore, the timing of the service of the 2012 notice was correct.

4.     The 2012 notice was recorded with the Copyright Office

124.     17 U.S.C. § 203 (a)(4)(A) requires that a copy of the notice be recorded with the Copyright Office before the effective date of termination as a condition to its taking effect.

125.     On March 16, 2012, the 2012 notice was recorded in the Copyright Office under volume number 3604, document number 369.

126.     As a consequence, the 2012 notice was properly recorded with the Copyright Office.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs hereby demand entry of judgment against the Defendant as follows:

A.     Declaratory judgment pursuant to 28 U.S.C. Sections 2201 (a) and 2202 declaring valid and enforceable the notice of termination under 17 U.S.C. Section 203 recorded on April 17, 2007 with the United States Copyright Office under volume number 3550, document number 153 thereby terminating Defendant's interests in the Work effective December 15, 2016, the date of effective termination listed in the 2007 notice or, in the alternative;

B.     If the Court were to find the 2007 notice invalid and unenforceable, declaratory judgment pursuant to 28 U.S.C. Sections 2201 (a) and 2202 declaring valid and enforceable the notice of termination under 17 U.S.C. Section 203 recorded on March 16, 2012 with the United States Copyright Office under volume number 3604, document number 369 thereby terminating Defendant's interests in the Work effective December 15, 2021, the date of effective termination listed in the 2012 notice;

C.     Awarding Plaintiffs their costs and disbursements, together with their reasonable attorneys' fees incurred in prosecuting this action; and

D.     Awarding Plaintiffs such other and further relief deemed by the Court to be just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby demand a trial by jury on all issues which are so triable.

Dated: December 21, 2012
      New York, New York

Respectfully submitted,

CAPLAN & ROSS, LLP

By: _____
     Brian D. Caplan (BC 01713)
     Jonathan J. Ross (JR 0581)
270 Madison Avenue, 13th Floor
New York, New York 10016
(212) 973-2376

- and -

CAREY RODRIGUEZ GREENBERG O'KEEFE, LLP

David P. Milian, Esq., Florida Bar No. 844421
*(pro hac vice application to be submitted)*
Steven Greenberg, Esq., Florida Bar No.0173924
*(pro hac vice application to be submitted)*
Isabelle Jung, Esq.,New York Reg.No.4734067
*(pro hac vice application to be submitted)*
David M. Levine, Esq.,New York Reg. No. 5079942
*(pro hac vice application to be submitted)*
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
305-372-7474

Attorneys for Plaintiffs