UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

GLORIA COOTS BALDWIN,
PATRICIA BERGDAHL, and
CHRISTINE PALMITESSA,

               **Plaintiffs,**

   - against -

EMI FEIST CATALOG, INC.,

              **Defendant.**

------------------------------------------------- X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/16/13
```

## OPINION AND ORDER

**12 Civ. 9360 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

      Gloria Coots Baldwin, Patricia Bergdahl, and Christine Palmitessa ("Plaintiffs") bring this action against EMI Feist Catalog, Inc. ("EMI") seeking a declaratory judgment that their 2007, or alternatively, that their 2012 copyright termination notice is valid and enforceable, thereby terminating EMI's copyright in the iconic song "Santa Claus Is Comin' To Town" (the "Song").  Subject matter jurisdiction is conferred by the Copyright Act.[1]  Now before the Court are the

-----

[1]    *See* 28 U.S.C. § 1338(a).

1

parties' cross-motions for summary judgment. EMI also moves to exclude the affidavit and testimony of Plaintiffs' purported copyright law expert, Lisa A. Alter, under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[2] and Rule 702 of the Federal Rules of Evidence. For the reasons stated below, both of EMI's motions are granted, and Plaintiffs' motion is denied.

## II.    BACKGROUND[3]

In 1934, John Frederick Coots and Haven Gillespie co-authored the Song.[4] In an agreement (the "1934 Agreement"), Gillespie and Coots conveyed worldwide copyright ownership to Leo Feist, Inc. ("Feist").[5] On September 27, 1934, the Song was registered in the Copyright Office under Feist's name.[6] Pursuant to the Copyright Act of 1909, the Song had an initial 28 year copyright

---

[2]     509 U.S. 579 (1993).

[3]     The following facts are derived from the Complaint, the parties' Rule 56.1 statements, and supporting documents. The facts are undisputed unless otherwise noted.

[4]     *See* EMI's Local Rule 56.1 Statement of Uncontroverted Facts ("EMI 56.1") ¶ 2.

[5]     *See id.* ¶ 3.

[6]     *See id.* ¶ 5.

term, plus a 28 year "renewal" term.[7]  By an agreement dated December 3, 1951

(the "1951 Agreement"), Coots granted Feist "all renewals and extensions of all

copyrights [in the Song] throughout the world."[8]  At the end of the initial 28 year

term in 1961, Feist renewed its copyright and continued its ownership.[9]

On September 24, 1981, pursuant to Section 304(c) of the 1976

Copyright Act, Coots sent Feist a notice to terminate the 1951 Agreement ("1981

Notice").[10]  The 1981 Notice selected October 23, 1990 as the effective date of

termination.[11]  On November 25, 1981, Coots' attorney, M. William Krasilovsky

sent the 1981 Notice to the Copyright Office for recordation.[12]  On December 15,

---

[7]     *See id.* ¶ 6.

[8]     *Id.* ¶ 7.

[9]     *See id.* ¶ 8.

[10]    *See id.* ¶ 13.

[11]    *See* 1981 Notice, Ex. E to Complaint ("Compl."), at 1.

[12]    *See* 11/25/81 Krasilovsky Letter to Register of Copyrights, Ex. F to Compl., at 1.

1981, Coots and Plaintiffs[13] entered into the 1981 Agreement with EMI.[14] The

1981 Agreement granted EMI any and all rights in the Extended Renewal Period,

which — according to the 1981 Notice — would commence in 1990.[15] In

exchange, EMI agreed to pay Plaintiffs a $100,000 bonus, as well as royalties for

the Extended Renewal Period at the rate set forth in the 1951 Agreement.[16] The

1981 Agreement represented:

> [Coots and Plaintiffs] had executed, served upon [EMI],
> and recorded in the Copyright Office a Notice of
> Termination [the 1981 Notice] in full compliance with the
> requirements of the Copyright Act of 1976 and the
> regulations of the Register of Copyrights pertaining thereto
> which shall for the purposes of this agreement and Section
> 304(c)(6)(D) of the Copyright Act of 1976 be deemed to
> have been served upon [EMI], in advance of any further

---

[13]    The 1981 Agreement was executed by Coots, his daughter — Coots
Baldwin — and his other three – now deceased — children. *See* Compl. ¶ 24.

[14]    *See* EMI 56.1 ¶ 15. Robbins Music, Inc. ("Robbins") is actually the
named grantee in the 1981 Agreement. Robbins is Feist's successor-in-interest,
and EMI is Robbins' successor-in-interest. Because Feist and Robbins were
ultimately acquired by EMI in the 1980's, Feist, Robbins, and EMI are referred to
herein as "EMI."

[15]    *See* 1981 Notice at 1; 1981 Agreement, Ex. G to Compl., ¶ 1.

[16]    *See* 1981 Agreement ¶ 4.

4

grant of rights hereunder, and shall be deemed to take effect at the earliest date possible under the Copyright Act of 1976 and the regulations prescribed by the Register of Copyrights.[17]

On May 7, 1982, the Copyright Office sent Krasilovsky a letter, stating, "[p]ursuant to our telephone conversation of March 1, 1982, we are returning [the 1981 Notice] to you unrecorded."[18]  Only Krasilovsky was copied on the letter.[19]  The 1981 Notice was never later recorded with the Copyright Office.[20]

On April 6, 2004, Plaintiffs sent EMI a termination notice (the "2004 Notice"), pursuant to Section 304(d) of the 1976 Copyright Act.[21]  The 2004 Notice listed September 27, 2009 as the effective date of termination.[22]

On April 17, 2007, Plaintiffs sent EMI another termination notice (the

---

[17]     *Id.* ¶ 3(a).

[18]     5/26/82 Mark Thur Letter to Krasilovsky, Ex. H to Compl., at 1.

[19]     Plaintiffs contend that EMI learned of the non-recordation in 2004. EMI responds that it did not learn of the non-recordation until 2011.  In any event, there is no dispute that the 1981 Notice was never recorded.

[20]     *See* EMI 56.1 ¶ 19; Plaintiffs' Response in Opposition to Defendant's Statement of Uncontroverted Facts Pursuant to Rule 56.1 ("Pl. Opp. 56.1") ¶ 37.

[21]     *See* 2004 Termination Notice, Ex. I to Compl., at 1.

[22]     *See id.*

"2007 Notice"), this time under Section 203 of the 1976 Act.[23] On March 13, 2012, Plaintiff sent EMI a second Section 203 termination notice (the "2012 Notice").[24] Both notices identified the 1981 Agreement as the only Agreement to be terminated.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[25] "A genuine dispute exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[26] "A fact is material if it might affect the outcome of the suit."[27]

---

[23]   *See* 2007 Termination Notice, Ex. J to Compl., at 1.

[24]   *See* 2012 Termination Notice, Ex. L to Compl., at 1.

[25]   *Rivera v. Rochester Genesee Regional Transp. Auth.*, 702 F.3d 685, 692 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

[26]   *Finn v. N.Y. State Office of Mental Health-Rockland Psychiatric Ctr.*, 489 Fed. App'x 513, 514 (2d Cir. 2012) (quotation marks omitted).

[27]   *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact."[28]  To defeat a motion for summary judgment, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'"[29] and "'may not rely on conclusory allegations or unsubstantiated speculation.'"[30]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[31]  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[32]

---

[28]     *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. Catrett*, 477 U.S. 317, 322 (1986)).  *Accord Powell v. Donahoe*, 519 Fed. App'x 21, 22 (2d Cir. 2013).

[29]     *Gioia v. Forbes Media LLC*, 501 Fed. App'x 52, 54 (2d Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[30]     *Robinson v. Allstate Ins. Co.*, 508 Fed. App'x 7, 9 (2d Cir. 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

[31]     *Cuff ex rel. B.C. v. Valley Cent. School Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[32]     *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

## IV.   APPLICABLE LAW

### A.   Admissibility of Expert Testimony

The proponent of expert evidence bears the initial burden of establishing admissibility by a "preponderance of proof."[33]  Rule 702 of the Federal Rules of Evidence states the following requirements for the admission of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[34]

Under Rule 702 and *Daubert*, the district court must determine whether the proposed expert testimony "both rests on a reliable foundation and is relevant to the task at hand."[35]  The district court must act as "'a gatekeeper to

---

[33]     *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987) (discussing Fed. R. Evid. 104(a)).  *Accord Daubert* , 509 U.S. at 592.

[34]     Fed. R. Evid. 702.

[35]     509 U.S. at 597.  *Accord Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999).

8

exclude invalid and unreliable expert testimony.'"[36]

As a general matter, experts may not testify as to conclusions of law.[37] Doing so would usurp the role of the court in determining the applicable legal standards.[38] Although Rule 704 states that "[a]n opinion is not objectionable just because it embraces an ultimate issue,"[39] the Second Circuit has held that Rule 704 "was not intended to allow experts to offer opinions embodying legal conclusions."[40] Testimony is impermissible where it "deliberately track[s] the language of the relevant regulations and statutes, [is] not couched in even conclusory factual statements, and [is] not helpful to the [trier of fact] in carrying out its legitimate function."[41]

---

[36]     *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 449 (2d Cir. 1999) (quoting *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 202 (2d Cir. 1999)). *Accord Louis Vuitton Malletier v. Dooney & Bourke, Inc.* ("*Vuitton IV*"), 525 F. Supp. 2d 558, 561-65 (S.D.N.Y. 2007) (discussing district court's "special obligation" to gatekeep with respect to expert evidence).

[37]     *See United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).

[38]     *See United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999).

[39]     Fed. R. Evid. 704.

[40]     *United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988), *rev'd in part on other grounds*, 856 F.2d 5 (2d Cir. 1988).

[41]     *Fiataruolo v. United States*, 8 F.3d 930, 942 (2d Cir. 1993).

9

### B.    Copyright Law

The instant dispute concerns events that have unfolded over nearly eighty years.  During this period, copyright law has changed several times.  The 1909 Copyright Act[42] was the law in force when Coots co-authored the Song, conveyed copyright ownership to Feist, and entered the 1951 Agreement.  In 1976, Congress significantly amended the 1909 Act.  The 1976 Copyright Act contains extensive retroactive provisions governing works executed prior to the Act's effective date of January 1, 1978.[43]  In 1998, Congress amended the Act with the Sonny Bono Copyright Term Extension Act ("Bono Act").[44]  There are two copyright law provisions central to this dispute: (1) the duration of copyrights; and (2) the right of certain parties to terminate the assignment of a copyright (a "termination right").

### 1.    Duration of Copyrights

The current copyright term for works created prior to January 1, 1978,

---

[42]    *See* 17 U.S.C. § 24 (repealed 1978).

[43]    *See id.* § 304.

[44]    *See*  Pub. L. No. 105–298, § 102, 112 Stat. 2827 (1998) (codified at 17 U.S.C. §§ 301, 302, 303, 304).

is 95 years.[45]  The 1909 Act provided an initial 28 year term, plus a single renewal period ("Renewal Term") of an additional 28 years by filing a form with the Copyright Office.[46]  The 1976 Act then added a second renewal term of 19 years ("Extended Renewal Term"), extending the total length of copyright for pre-1978 works from 56 to 75 years.[47]  An author may assign his renewal rights, but maintains a right to terminate his or her assignment of the Extended Renewal Term, so that the author or his successors can reclaim the copyright for the additional 19 years.[48]

The 1998 Bono Act extended the length of the 1976 Act's Extended Renewal Term by another 20 years, bringing the total term of copyright for pre-1978 works to 95 years.[49]  By adding Section 304(d), the Bono Act allowed the author or his successor(s) to exercise a termination right for the additional 20 years

---

[45]   *See* 17 U.S.C. § 304(b), *amended by* Bono Act.

[46]   *See id.* § 24.

[47]   *See id.* § 304.

[48]   *See id.* § 304(c).

[49]   *See id.* § 304(b).

if certain conditions are met.[50]

## 2.    Termination Rights

Section 304(c) of the 1976 Act provides authors and their heirs with the right to terminate the grant of a transfer or license, that was effected prior to 1978.[51]  By exercising their termination rights, authors or their heirs could recapture the work's additional value.[52]  "Authors or their statutory heirs holding termination rights are . . . left with an opportunity to threaten (or to make good on a threat) to exercise termination rights and extract more favorable terms from early grants of an author's copyright."[53]  Section 304(c) also provides only a limited 5 year window of time "beginning at the end of [56] years from the date copyright was originally secured, or beginning on January 1, 1978, whichever is later."[54]

The Act assumes that grants will remain in effect unless terminated in accordance with Section 304(c).  As such, Section 304(c)(6)(F) states, "[u]nless

---

[50]     *See id.* § 304(d).

[51]     *See id.* § 304(c).  Section 304(c) applies only to pre-1978 grants. Post-1978 grants are subject to a different termination right under Section 203.

[52]     *See id.*; H.R. Rep. No. 94-1476, at 140 (1976).

[53]     *Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193, 204 (2d Cir. 2008).

[54]     17 U.S.C. § 304(c)(3).

and until termination is effected under this subsection [by recording a written notice in the Copyright Office before the effective date of termination, among other requirements], the grant, if it does not provide otherwise, continues in effect for the remainder of the extended renewal term."[55]

When the length of the copyright term was extended 20 years by the 1998 Bono Act, Congress provided an additional window of time for the exercise of termination rights.[56] For pre-1978 grants whose Section 304(c) termination right had expired without being exercised, termination could "be effected at any time during a period of 5 years beginning at the end of 75 years from the date copyright was originally secured."[57]

## V.   DISCUSSION

### A.   EMI's Motion to Exclude Expert Testimony

In both their own summary judgment motion and their opposition motion, Plaintiffs rely heavily on the Affidavit of Lisa Alter — their purported copyright law expert.  Alter's opinion is based on her thirty years of experience as

---

[55]   *Id.* § 304(c)(6)(F).

[56]   *See id.* § 304(d).

[57]   *Id.*

13

a practicing attorney who specializes in copyright law.[58]

Alter opines on one issue: the meaning of Sections 304 and 203 of the Copyright Act.[59] Alter interprets Section 304(6)(D) to mean that an agreement between an author or his heirs and an existing grantee takes effect immediately upon execution, provided that the grantee has been served a termination notice.[60] Additionally, she opines — without citation — that "a grant of all rights under copyright cannot be subject to two different agreements simultaneously."[61] She thus concludes that "[b]eginning on December 15, 1981, the 1951 Agreement ceased to govern the relationship between Coots and Robbins in the U.S., and the 1981 Agreement became the operative document."[62]

EMI argues that Alter's testimony is unreliable under *Daubert* because it is based only on her unspecified "experience," ignores the facts of record and fundamental tenets of contract and statutory construction, and fails to

---

[58]    *See* Affidavit of Lisa A. Alter ("Alter Aff."), Ex. A to the Declaration of Donald S. Zakarin in Support of Defendant's Motion to Strike "Expert" Affidavit of Lisa Alter ("Zakarin Decl."), ¶ 1.

[59]    *See id.* ¶¶ 7-28.

[60]    *See id.* ¶ 22.

[61]    *Id.* ¶ 23.

[62]    *Id.*

assist the Court.[63]  Most importantly, EMI argues that Alter's opinions are legal conclusions and, therefore, inadmissible as a matter of law.[64]

The Second Circuit has held that the testimony of an expert on matters of domestic law is inadmissable for any purpose.[65]  Courts have an obligation to exclude affidavits that purport to construe Copyright Law.[66]  Alter's affidavit expresses legal conclusions on the meaning of the 1976 Act, with the sole exception of some brief historical background on the Act.[67]  Her testimony is "calculated to 'invade the province of the court to determine the applicable law and to instruct the jury as to that law.'"[68]

Plaintiffs respond that Alter's testimony should be admitted because

---

[63]     *See* Defendant's Reply Memorandum of Law in Further Support of Its Motion to Exclude the Affidavit and Testimony of Plaintiffs' Purported U.S. Copyright Law "Expert" Lisa A. Alter at 1.

[64]     *See id.*

[65]     *See Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion . . . .").

[66]     *See Motown Prods., Inc. v. Cacomm, Inc.*, 668 F. Supp. 285, 288 (S.D.N.Y. 1987), *rev'd on other grounds*, 849 F.2d 781 (2d Cir. 1988) (holding inadmissible an affidavit by copyright law expert opining that a term was suggestive rather than descriptive because his opinion was a conclusion of law).

[67]     *See* Alter Aff., *passim.*

[68]     *Fiataruolo*, 8 F.3d at 942 (quoting *Scop*, 846 F.2d at 140).

"the case will be tried as a bench trial."[69]  Plaintiffs' argument is odd considering

they have requested a jury.[70]  In any event, Alter's testimony is inadmissible as a

matter of law whether presented to a jury or to the Court because it does nothing

other than express legal conclusions.[71]  Therefore, the Alter Affidavit is stricken.

### B.    Summary Judgment Motion

The sole issue in this case is whether Plaintiffs have the right to

terminate EMI's copyright ownership in the Song.  EMI argues that even if

Plaintiffs could terminate the 1981 Agreement, EMI owns the copyright until 2029

under the 1951 Agreement.[72]  Although Plaintiffs exercised their right to terminate

the 1951 Agreement by serving the 1981 Notice and negotiating a substantial

bonus payment for themselves, they failed to effect termination by recording the

---

[69]    Plaintiffs' Response in Opposition to Defendant's Motion to Exclude the Affidavit and Testimony of Plaintiffs' Expert Lisa A. Alter at 11.

[70]    *See* Compl. ¶ 26.

[71]    *See Buckley v. Deloitte & Touche USA, LLP*, — Fed. App'x —, 2013 WL 5629788, at *1 (2d Cir. Oct. 16, 2013) (citing *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.")).

[72]    *See* Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment ("EMI Mem.") at 1.

Notice with the Copyright Office, as required by Section 304(c)(4)(A).[73]  Under
Section 304(c)(6)(F), therefore, the 1951 Agreement remains in effect until 2009[74]
— and after the passage of the Bono Act — until 2029.

Plaintiffs argue that the 1981 Agreement is the only agreement in
force between the parties.[75]  Plaintiffs contend that the 1981 Agreement became
effective upon execution, even though the 1981 Notice was never recorded.[76]  In
addition, Plaintiffs argue that both parties "presumed and intended" the 1981
Agreement to replace the 1951 Agreement.[77]  Thus, only the 1981 Agreement
remains today.  Finally, Plaintiffs claim that their 2007, or alternatively, that their

---

[73]     *See id.* at 1-2.

[74]     *See* 17 U.S.C. § 304(c)(6)(F) ("Unless and until termination is
effected under this subsection, the grant, if it does not provide otherwise, continues
in effect for the remainder of the extended renewal term.").  There is no dispute
that the 1951 Agreement "does not provide otherwise."

[75]     *See* Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion
for Summary Judgment ("Pl. Mem.") at 17.  Plaintiffs often rely on the Alter
Affidavit — which I deemed inadmissible — to support their arguments.  While I
give the Alter Affidavit no evidentiary weight, I will nonetheless address the merits
of those arguments.

[76]     *See id.* at 19.

[77]     *Id.* at 20.

17

2012 Notice can terminate the 1981 Agreement under Section 203.[78]

### 1.    The 1951 Agreement

The parties do not dispute that the 1981 Agreement is governed by

Section 304(c)(6)(D),[79] which states:

> A further grant, or agreement to make a further grant, of
> any right covered by a terminated grant is valid only if it is
> made after the effective date of the termination. As an
> exception, however, an agreement for such a further grant
> may be made between the author . . . and the original
> grantee or such grantee's successor in title, after the notice
> of termination has been served as provided by clause (4) of
> this subsection.[80]

The 1981 Notice selected October 23, 1990 as the effective date of

termination of the 1951 Agreement.   Ordinarily, Plaintiffs would have to wait until

that date to grant the rights covered by the 1951 Agreement.  But because EMI is

the original grantee, the issue is whether the exception is satisfied.

Plaintiffs argue that they fully complied with Section 304(c)(6)(D)

when they served the 1981 Notice on EMI.[81]  Nothing supports Plaintiffs'

---

[78]    See id. at 15-16.

[79]    See id. at 18-19; EMI Mem. at 14.

[80]    17 U.S.C. § 304 (c)(6)(D).

[81]    See Pl. Mem. at 18 n.20

18

interpretation of this section, which plainly requires the "notice of termination [to be] served *as provided by clause (4) of this subsection*."[82] Section 304(c)(4) clearly states, "A copy of the [termination] notice shall be recorded in the Copyright Office before the effective date of termination, as a condition to its taking effect."[83] It is undisputed that the 1981 Notice was never recorded.[84] Thus, the 1951 Agreement remains in effect until 2029.

To avoid this result, Plaintiffs contend that the non-recordation is irrelevant because the 1981 Agreement superceded the 1951 Agreement "de facto."[85] Plaintiffs argue that the parties intended the 1981 Agreement to

---

[82]     17 U.S.C. § 304(c)(6)(D) (emphasis added). *See, e.g., Burroughs v. Metro-Goldwyn-Mayer, Inc.*, 491 F. Supp. 1320, 1325 (S.D.N.Y. 1980), *aff'd*, 636 F.2d 1200 (2d Cir. 1980) (finding that plaintiffs' Notice of Termination was a "nullity" in part because its service did not comply with Section 304(c)(4)); *Ray Charles Found. v. Robinson*, 919 F. Supp. 2d 1054, 1063 (CD. Cal. 2013) ("The termination provisions under the Copyright Act are formalistic and complex, such that authors, or their heirs, successfully terminating the grant . . . only do so against all odds.") (internal quotation marks omitted).

[83]     17 U.S.C. § 304(c)(4)(A).

[84]     Plaintiffs contend that EMI was responsible for the non-recordation because Coots had granted EMI a general power of attorney in the 1951 and 1981 Agreements. However, the 1981 Agreement expressly represented and warranted that Plaintiffs had "recorded [the 1981 Notice] in the Copyright Office." 1981 Agreement ¶ 3(a). EMI did not receive a copy of the Copyright Office's letter rejecting the 1981 Notice.

[85]     Pl. Mem. at 19.

immediately supercede the previous agreement.[86]  Plaintiffs are correct that "parties

to a transfer or license" retain the right to "voluntarily agree[ ] at any time to

terminate an existing grant and negotiat[e] a new one."[87]  Indeed, the parties could

have agreed that the 1981 Agreement would replace the 1951 Agreement on the

date of its execution.

      But the parties did not do so.  Nothing in the 1981 Agreement

suggests that the parties intended it to immediately supercede the earlier

agreement.  Instead, the 1981 Agreement was intended to "insure" that EMI would

retain its copyright interest for the Extended Renewal Term.[88]  Under the 1976 Act,

the Extended Renewal Term would commence in 1990, at the end of the Renewal

Term.[89]  The grant language of the 1981 Agreement also conveyed only the

"Extended Term of Renewal Copyright."[90]  Furthermore, the 1981 Notice is titled,

---

[86]    *See id.* at 21.

[87]    Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp. Mem.") at 51 (citing *Steinbeck*, 537 F.3d at 202 ("[N]othing in the [Copyright Act] is intended to change the existing state of the law of contracts concerning the circumstances in which an author may cancel or terminate a license, transfer, or assignment." ).

[88]    1981 Agreement at p. 1.

[89]    Under the 1909 Copyright Act, the 28 year Renewal Term began in 1961 and ended in 1990.

[90]    1981 Agreement at pp. 5-6.

"Notice of Termination Covering Extended Renewal Term (Under Section

304(c))."[91]   The 1981 Agreement did not cancel or supercede the earlier agreement

upon execution:

> [Coots and Plaintiffs] had executed, served upon [EMI],
> and recorded in the Copyright Office a Notice of
> Termination [the 1981 Notice] in full compliance with the
> requirements of the Copyright Act of 1976 and the
> regulations of the Register of Copyrights pertaining thereto
> which shall for the purposes of this agreement and Section
> 304(c)(6)(D) of the Copyright Act of 1976 be deemed to
> have been served upon [EMI], *in advance of any further
> grant of rights hereunder*, and *shall be deemed to take
> effect at the earliest date possible under the Copyright Act
> of 1976 and the regulations prescribed by the Register of
> Copyrights.*[92]

Thus, the 1981 Notice was intended to terminate the 1951 Agreement

on "the earliest possible date under the Copyright Act of 1976."[93]   By its own

terms, this date was October 23, 1990 — the effective date of the 1981 Notice.

However, because the 1981 Notice was never recorded, the "earliest date possible"

to terminate the 1951 Agreement is 2029.

---

[91]    1981 Notice at 1.

[92]    1981 Agreement ¶ 3(a) (emphasis added).

[93]    *Id. Cf. Steinbeck*, 537 F. 3d at 201 (holding that an agreement
providing, "[t]his agreement, when signed by Author and Publisher, will cancel
and supercede the previous agreements . . ." was clearly intended to terminate an
earlier agreement).

21

The royalties provision further undercuts Plaintiffs' interpretation. The 1981 Agreement does not provide for the payment of royalties until the commencement of the Extended Renewal Term in 1990.[94]  If the 1981 Agreement immediately superceded the 1951 Agreement, Plaintiffs would have forfeited their right to royalties from 1981 until 1990.  The better explanation is that the parties intended the 1951 Agreement to remain in effect until 1990.

Nothing in the 1981 Agreement suggests otherwise.  Plaintiffs search for support in a provision stating, "Grantor hereby grants . . . all rights and interests *whatsoever now or hereafter known or existing* . . . acquired or possessed by Grantor."[95]  Additionally, Plaintiffs note that they received an "outright payment of $100,000 (i.e. a non-recoupable bonus)" to be paid in installments beginning in 1981.[96]  Plaintiffs are grasping at straws.  Under New York contract law, the parties must have "clearly expressed their intention that a subsequent agreement superseded or substituted for an old agreement."[97]  Neither provision suggests that

---

[94]   *See* 1981 Agreement ¶ 4(a).

[95]   *Id.* ¶ 1 (emphasis added).

[96]   Pl. Opp. Mem. at 16 (citing 1981 Agreement ¶ 4(a)).

[97]   *Flaum v. Birnbaum*, 508 N.Y.S.2d 115, 120 (4th Dep't 1986) (citing *Northville Indus. Corp. v. Fort Neck Oil Terminals Corp.*, 474 N.Y.S.2d 122, 125 (2d Dep't 1984), *aff'd*, 64 N.Y.2d 930 (1985)).

22

the 1951 Agreement was immediately terminated or superceded. The 1981 Agreement acknowledged that EMI already owned the copyright for the Renewal Term. By serving the 1981 Notice, Plaintiffs threatened to terminate EMI's rights for the Extended Renewal Term. The $100,000 was the consideration paid to Plaintiffs to ensure that EMI's rights would continue.[98]

Finally, Plaintiffs' interpretation is belied by the testimony of their own witnesses — Krasilovsky and Coots Baldwin — who have personal knowledge of the negotiation of the 1981 Agreement. Coots Baldwin testified, "That [1951] agreement, the one that was valid at that point was due to expire in 1990. My understanding at the time was, of the copyright law, that it was extended for another 19 years. So from 1990 to 2009."[99] In a 1981 letter to Coots' son, Krasilovsky explained that the purpose of negotiations with EMI was "to acquire those termination rights which cover the additional 19 years of copyright commencing in 1990."[100] The letter reflects Krasilovsky's contemporaneous

---

[98]   *See* 1981 Agreement ¶ 4(a). If Plaintiffs had recorded the 1981 Notice, EMI's rights would continue under the 1981 Agreement. However, because Plaintiffs failed to record the 1981 Notice, Plaintiffs' rights under the 1951 Agreement continued under Section 304(c)(6)(F).

[99]   11/13/12 Deposition of Gloria Coots Baldwin, Ex. 3 to Zakarin Decl., at 45:19-46:16.

[100]   11/18/81 Krasilovsky letter to Coots, Jr., Ex. 7 to Zakarin Decl., at 1-2.

understanding that the 1981 Agreement was not intended to immediately terminate the 1951 Agreement.

### 2.    The Subsequent Termination Notices

Plaintiffs have served Termination Notices in 2004, 2007, and 2012. Unfortunately for Plaintiffs, the 1951 Agreement survives them all. The 2007 and 2012 Notices cannot touch the 1951 Agreement because they were served pursuant to Section 203, which applies only to post-1978 grants.[101] Although the 2004 Notice was served under Section 304, the provision for pre-1978 grants, Plaintiffs do not get a second bite at the termination apple.

As part of the 1998 Bono Act, Section 304(d) provides a new termination right but only "where the author or owner of the termination right has not previously exercised such termination right [under Section 304(c)]."[102] "[N]othing in the statute suggests that an author or an author's statutory heirs are entitled to more than one opportunity . . . to use termination rights to enhance their bargaining power or to exercise them."[103] Plaintiffs exercised their Section 304(c) termination rights when they served the 1981 Notice on EMI and secured a

---

[101]    *See* 17 U.S.C. § 203(a).

[102]    *Id.* § 304(d).

[103]    *Steinbeck,* 537 F.3d at 204 (citing 17 U.S.C. § 304(d)).

substantial $100,000 bonus payment. Plaintiffs' ability to "wield the threat of termination" to secure a better deal is exactly what Congress intended.[104] After obtaining that improved deal with the same grantee, Plaintiffs had no further need nor right to terminate the 1951 Agreement. As such, EMI owns the copyright until 2029.

## VI.    CONCLUSION

For the foregoing reasons, EMI's motion for summary judgment is granted in its entirety and the Plaintiffs' motion for summary judgment is denied in its entirety. EMI's motion to strike is also granted. The Clerk of the Court is directed to close these motions (Docket Nos. 22, 43, 51), and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             December 16, 2013

---

[104]      *Id.* at 202.

25

- Appearances -

**For Plaintiffs:**

Brian D. Caplan, Esq.
Jonathan James Ross, Esq.
Caplan & Ross, LLP
270 Madison Avenue, 13th Floor
New York, NY 10016
(212) 973-2376

David Phillip Milian, Esq.
Carey, Rodriguez, Greenberg,
O'Keefe, LLP
1395 Brickell Avenue, Suite 700
Miami, FL 33131
(305) 356-5473

**For Defendant:**

Donald S. Zakarin, Esq.
Frank Phillip Scibilia, Esq.
Ross McClintic Bagley, Esq.
Pryor Cashman, LLP
7 Times Square
New York, NY 10036
(212) 326-0806